UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>                Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>HANSON AGGREGATES MIDWEST, formerly known as Material Service Corporation,<br><br>                Defendant/Counterclaim Plaintiff. | Case No. 1:21-cv-06390<br><br>Hon. Nancy L. Maldonado<br>Magistrate Judge Sunil R. Harjani |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 1 |
| | A. | Hanson's Claim for Defense and Indemnity Coverage | 1 |
| | B. | Procedural History | 3 |
| | C. | Hanson's Requests for Production and the Parties' Meet and Confer Efforts | 4 |
| III. | ARGUMENT | | 5 |
| | A. | The Documents Hanson Requests Are Not Relevant. | 5 |
| | 1. | Requests 2, 3, 7, and 8 | 5 |
| | 2. | Requests 4-6 | 12 |
| | B. | Searching for, Collecting, Reviewing, and Producing the Documents Sought by Hanson Would Impose a Significant Undue Burden on First American. | 13 |
| IV. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Colloid Co. v. Old Republic Ins. Co.*,
No. 93 C 0665, 1993 WL 222678 (N.D. Ill. June 21, 1993) ............................................. 11, 12

*American Safety Cas. Ins. Co. v. City of Waukegan*,
No. 07 C 1990, 2010 WL 3547958 (N.D. Ill. Sept. 7, 2010) ..................................................... 10

*Apex Mortgage Corp. v. Great Northern Ins. Co.*,
No. 17 C 3376, 2018 WL 341661 (N.D. Ill. Jan. 9, 2018) ........................................................ 10

*Art Akiane LLC. v. Art & Soulworks LLC*,
No. 19 C 2952, 2020 WL 5593242 (N.D. Ill. Sept. 18, 2020) ..................................................... 6

*Brown v. Crete Monee Cmty. Unit Sch. Dist., No. 201 U*,
No. 20 C 5688, 2022 WL 1620024 (N.D. Ill. May 23, 2022) ..................................................... 6

*City of South Bend Indiana v. Illinois Union Ins. Co.*,
1:17-cv-01344, 2017 WL 9856736 (S.D. Ind. Dec. 8, 2017) ..................................................... 11

*G&S Metal Consultants, Inc. v. Continental Cas. Co.*,
No. 3:09-CV-493-JD-PRC, 2014 WL 2881537 (N.D. Ind. June 25, 2014) ............................. 11

*Graham v. Progressive Direct Ins. Co.*,
No. 09-969, 2010 WL 3092684 (W.D. Pa. Aug. 6, 2010) ......................................................... 12

*Hum. Rts. Def. Ctr. v. Jeffreys*,
No. 18 C 1136, 2022 WL 4386666 (N.D. Ill. Sept. 22, 2022) ................................................ 6, 7

*LKQ Corp. v. Gen. Motors Co.*,
No. 20 C 2753, 2021 WL 4127326 (N.D. Ill. Sept. 9, 2021) ..................................................... 6

*McConchie v. Scholz*,
21-CV-3091, 2021 WL 4538491 (N.D. Ill. Aug. 21, 2021) ....................................................... 6

*Nautilus Ins. Co. v. Raatz*,
No. 08 c 6182, 2011 WL 98843 (N.D. Ill. Jan. 12, 2011) ........................................................ 10

*Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*,
135 F.R.D. 101 (D.N.J. 1990) ................................................................................................... 12

*Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*,
772 F.3d 391 (7th Cir. 2014) ....................................................................................................... 7


*Tech Data Corp. v. Travelers Cas. and Sur. Co. of Am.*,
   1:16-CV-11197, Dkt. 87 (minute entry) (N.D. Ill. Mar. 19, 2018) ........................................... 10

*Transcap Associates, Inc. v. Euler Hermes American Credit Indem. Co*,
   No. 1:08-cv-00723, 2009 WL 1543857 (N.D. Ill. June 3, 2009) .............................................. 11

*United Church of the Med. Center v. Medical Center Com'n*,
   689 F.2d 693 (7th Cir. 1982) ..................................................................................................... 7

**Statutes**

Illinois Title Insurance Act .................................................................................................................. 10

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 6, 13

iii

I.      **INTRODUCTION**

Plaintiff First American Title Insurance Company ("First American") respectfully submits this response in opposition to Defendant Hanson Aggregates Midwest's ("Hanson") motion to compel production of unrelated insurance claims and unrelated title insurance policies of other First American policyholders, together with non-existent First American claims handling guidance on "easement claims." Dkt. 66 ("Mot."). The documents sought by Hanson have no conceivable relevance to any of the claims or defenses in this insurance coverage case, in which the sole issue is whether a specific title insurance policy that First American issued to Hanson provides coverage for a fact-specific claim concerning an alleged easement for a 54-inch sewer pipe over a quarry owned by Hanson. As discussed below, this title insurance claim, like most title insurance claims, turns on specific policy language, including exceptions that are completely unique to this policy, and the particulars of the underlying title problem that gave rise to it. Now, beyond the close of fact discovery and in the face of First American's pending motion for judgment on the pleadings (Dkt. 26), Hanson's motion is little more than an effort to delay further the Court's resolution of this case while First American continues to pay for Hanson's defense of the easement claims brought against it in Illinois State Court, notwithstanding its denial of coverage. Defendant's motion should be denied.

II.     **BACKGROUND**

  A.     **Hanson's Claim for Defense and Indemnity Coverage**

In 2006, First American issued the title insurance policy at issue in this case (the "Policy") as part of a corporate transaction (the "Transaction") in which Hanson, which was then known as Material Service Corporation ("MSC"), was sold to Hanson's now corporate parent, Hanson Aggregates Holdings, Inc. ("Holdings"). The Policy insures several properties including a quarry that Hanson operates in McCook, Illinois (the "Quarry").

1

Although the title insurance policy at issue in this case was issued on an American Land Title Association ("ALTA") form, the Policy language itself was modified and is unique to the property that it insures. The terms of the Policy, including the exceptions and exclusions to coverage that are the subject of this dispute, were negotiated at length between First American and Hanson/MSC (which was represented by experienced real estate counsel) following a land survey and a review of recorded land documents pertaining to the insured properties. Declaration of Skyler J. Silvertrust in Opposition to Hanson's Motion to Compel ("Silvertrust Decl.") ¶ 10, Ex. A (Deposition of First American's 30(b)(6) Representative R. Scott) at Tr. 66:11-68:18. The Policy has unique provisions that are at the heart of this case. For example, one of the Policy exceptions on which First American relies excepts from coverage claims "which arise by reason of [a] 20 foot public utility easement and right of way for [a] 54 inch sewer adjoining thereto as disclosed by instrument recorded April 6, 1935 as document 11595175 in Book 31889 Page 1 . . . [,]" which is the subject of the underlying claim. Dkt. 1-1, Ex. A at 12, 14. The Policy also contains a "non-imputation endorsement" that is bespoke to Hanson's Policy, having been negotiated by the parties and issued by First American only on the condition that Hanson/MSC provide an affidavit from senior MSC officers attesting to various matters relating to the properties at issue in the Transaction. *Id*. at ¶ 11, Ex. B (Deposition of K. Guarnieri) at Tr. 67:2-20, 103:5-10. In relevant part, the non-imputation affidavit states that "[t]he undersigned make this affidavit for the purpose of inducing First American to include the [non-imputation] [e]ndorsement . . . with the knowledge that First American would not issue the [e]ndorsement without having first received this affidavit and will rely on the assurances and representations made herein." Dkt. 1-2, Ex. B at ¶ 8.

In 2017, Hanson submitted a claim to First American for coverage for certain claims that had been asserted against Hanson in an ongoing state court lawsuit (the "Underlying Lawsuit") between Hanson and the Village of La Grange (the "Village"). Specifically, the Village alleged in the Underlying Lawsuit that it holds an easement over a sewer pipe at the Quarry (the "Sewer Pipe"), which Hanson/MSC admittedly severed in 1992 so that it could expand mining at the Quarry. After initially denying the claim, First American agreed to pay Hanson's defense costs in the Underlying Lawsuit subject to a reservation of rights to seek a judicial determination that the Policy does not provide coverage or a defense for the Village's claims. First American thereafter participated in several discussions and mediations in an attempt to settle and resolve the Underlying Lawsuit. However, when it became apparent that the Underlying Lawsuit was unlikely to settle, First American filed this declaratory judgment action. Nevertheless, First American continues to pay for Hanson's defense.

## B. Procedural History

As alleged in the complaint, First American seeks a declaration that the Policy does not provide for defense or indemnity coverage for the Village's claims in the Underlying Lawsuit. In May of last year, First American moved for judgment on the pleadings on the basis that coverage for the Village's alleged easement is precluded under the terms of the Policy and because the affidavit on which First American told Hanson it was relying was false. Dkt. 26, 27. First American's motion is pending.

Between February 15, 2022, and the close of fact discovery on December 22, 2022, the parties engaged in extensive written and document discovery and conducted numerous fact depositions. Although this case is a straightforward contractual dispute that can and should be resolved on the terms of the Policy without the need for significant extrinsic evidence, First American has cooperated with Hanson's extremely broad document requests, ultimately producing

3

over 9,000 pages of documents in response to Hanson's requests seeking forty-two individual document categories, including all responsive/non-privileged documents from the claim file for this claim and First American's underwriting file for the Policy. Silvertrust Decl. ¶¶ 4, 12, Ex. C (Hanson's First Set of Document Requests). In addition to that discovery, Hanson also had the opportunity to depose First American's witnesses on their understanding of the Policy's terms and how those terms apply in the context of Hanson's claim based on the Village's asserted easement. *Id.* at ¶ 5.

    C.    **Hanson's Requests for Production and the Parties' Meet and Confer Efforts**

As the parties approached the end of document discovery, on August 26, 2022, Hanson propounded a new set of document requests (the "Requests") which are the subject of the instant motion to compel. The Requests seek an extraordinarily broad swath of documents, including other First American customers' title insurance policies and unrelated claims files going back for years. Tellingly, Hanson's motion fails to quote its Requests which demonstrate the fishing expedition it has been conducting. Among other things, the Requests seek:

2. All **TITLE INSURANCE POLICIES You** issued, sold, or subscribed to in favor of any insured containing any exception or exclusion **RELATED TO** a **STORM WATER EASEMENT** from 2005 to 2007 and 2015 to present.

3. All **DOCUMENTS RELATING TO CLAIMS** for insurance coverage **RELATING TO EASEMENT CLAIMS** received by **YOU** from 2015 to present, including, but not limited to, those **RELATING TO** the settlement of such **CLAIMS**.

\*\*\*

7. All **RESERVATION OF RIGHTS** issued or sent by **YOU** to any insured **RELATING TO CLAIMS** for insurance coverage **RELATING TO EASEMENT CLAIMS** from 2015 to the present.

8. All **COMMUNICATIONS** from 2015 to the present from **YOU** to any of **YOUR** insureds **RELATING TO YOUR** determination as to whether or not **YOU** will or would provide coverage for any **CLAIMS** for insurance coverage **RELATING TO EASEMENT CLAIMS**.

4

Dkt. 68-1 at 7-9.

First American responded to Hanson's Requests on September 26, 2022, objecting on various grounds, including relevance and that the Requests were overbroad, unduly burdensome, and not proportional to the needs of this case. Dkt. 68-2. On November 9, 2022, over a month after First American served its responses and objections to Hanson's Requests, Hanson asked to confer with First American about its responses to the Requests. Silvertrust Decl. ¶ 8. The parties were unable to reach a resolution and Hanson filed this motion on December 22, 2023.

### III. ARGUMENT

The Court should deny Hanson's motion because the Requests seek documents that have no conceivable connection to any of the claims or defenses in this case. The only question in this action is whether the terms of Hanson's Policy provide coverage for the Village's claim that it has an express or prescriptive easement over Hanson's Quarry which permits it to run water through a 54-inch pipe that Hanson's predecessor severed. *See* Dkt. 37-1, *attach*. 1 (Village's Counterclaims against Hanson in the Underlying Lawsuit) ¶¶ 1-4, 34, 39. Because nothing in the requested documents even remotely relates to that unique issue, the Requests should be denied for lack of relevance. Moreover, even if Hanson could show that its Requests have some tangential relevance, the burden and expense of searching for and reviewing any responsive material would be disproportionate in relation to the needs of the case.

### A. The Documents Hanson Requests Are Not Relevant.

#### 1. Requests 2, 3, 7, and 8

It is difficult to imagine a more overbroad set of requests than Requests 2, 3, 7, and 8. Request 2 seeks "all" insurance policies First American issued between 2005-2007 and 2015 to the present and which contain an exception or exclusion "related to a storm water easement." Dkt.

5

68-1. Requests 3, 7, and 8 seek "all" files from 2015 to the present relating to claims submitted by other First American customers for coverage relating to "easement claims." *Id.* Asking a title insurance company to produce documents relating to other easement claims is like asking an automobile insurer to produce other automobile policies and claims. And asking for policies relating to a storm water easement is like asking an automobile insurer to produce policies covering fender benders. These Requests should be denied because policies issued to and claims submitted by *other customers* are entirely irrelevant to the specific issues pertaining to *Hanson's* Policy and coverage claim in this case.

Discovery is "not without limits, and relevancy is perhaps the most important of these constraints." *McConchie v. Scholz*, 21-CV-3091, 2021 WL 4538491, at *2 (N.D. Ill. Aug. 21, 2021). Indeed, "relevancy is the *sine qua non* of any discovery request." *Brown v. Crete Monee Cmty. Unit Sch. Dist., No. 201 U*, No. 20 C 5688, 2022 WL 1620024, at *2 (N.D. Ill. May 23, 2022). As such, courts have "emphasized that the core requirement of Rule 26(b)(1) that non-privileged material sought in discovery must be 'relevant' should be firmly applied." *Art Akiane LLC. v. Art & Soulworks LLC*, No. 19 C 2952, 2020 WL 5593242, at *5 (N.D. Ill. Sept. 18, 2020).

The "scope of relevant discovery must be framed by the claims and defenses in th[e] case," *McConchie*, 2021 WL 4538491, at *4, and, in that regard, "[p]arties are entitled to a reasonable opportunity to investigate the facts—and no more." *LKQ Corp. v. Gen. Motors Co.*, No. 20 C 2753, 2021 WL 4127326, at *1 (N.D. Ill. Sept. 9, 2021) (quotation omitted). As the moving party, Hanson "bears the initial burden of demonstrating that the documents it seeks are relevant." *Hum. Rts. Def. Ctr. v. Jeffreys*, No. 18 C 1136, 2022 WL 4386666, at *2 (N.D. Ill. Sept. 22, 2022). Hanson's motion does not come close to approaching the requisite showing here.

Hanson's principal argument is that "other policyholder claims under title policies involving non-imputation endorsements, easements, and storm water claims" are germane to a determination of whether First American handled Hanson's claim "consistently [with] … similarly situated insured's claims." Mot. at 11. Hanson says that, if First American treated Hanson's claim inconsistently with how First American handled "similarly situated insured's claims," that would "undermine[]" First American's position in this case. *Id*. at 11-12. However, it is inherent in the nature of title insurance that title claims cannot be compared in this manner.

First, title insurance policies themselves, unlike other types of insurance policies, are uniquely tailored to the specific land that they insure. *See Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 394 (7th Cir. 2014) (recognizing that "[t]itle insurance is different" from general liability insurance because "title insurance only indemnifies against losses incurred by reason of defects in title and specifically limits the insurer's duty to defend to claims that are within the policy's coverages"); *see also United Church of the Med. Center v. Medical Center Com'n*, 689 F.2d 693, 701 (7th Cir. 1982) (noting that "a[ny] given piece of property is considered to be unique"). Second, title insurance claims are likewise necessarily unique to the covered property at issue. As a result, a decision by First American to provide coverage under the circumstances of one particular claim would have no bearing on First American's decision to provide coverage under the different circumstances of another. Whether a different customer's different policy provides coverage for a different claim—such as one arising out of an electrical company's easement to maintain a junction box on the insured's front yard, or a private individual's right to travel across a portion of the insured's driveway, or even another municipality's right to use a storm water sewer running across that customer's property—is simply

7

irrelevant to the coverage determination for the claim here, which arises out of the Village's alleged Sewer Pipe easement that is unique to Hanson's Quarry property.

Hanson asserts that other unrelated policies and claims are relevant because this case involves interpretation of "standard form language found in policies issued by First American to other policyholders[.]" Mot. at 5. That is incorrect. Policy Exceptions 25 and 28, for example, which First American asserts preclude coverage in this case, reference deeds and other matters that relate to Hanson's Quarry specifically and do not contain terms that would appear in other customers' policies. Exception 25 provides a coverage exception for "Easements and Restrictions contained in Limited Warranty Deed recorded March 9, 2000 as document 00171725 made by General Motors Corporation to Material Service Corporation . . ." and Exception 28 excepts from coverage claims relating to the Quarry's "20 foot public utility easement and right of way for 54 inch sewer adjoining thereto as disclosed by instrument recorded April 6, 1935 as document 11595175 in Book 31889 Page 1 . . . ." Dkt. 1 ¶ 12 & Ex. A at 14. Obviously, other customers' policies, which do not contain these very specific exceptions, would be of no relevance to the determination of whether they apply to the Village's sewer easement claim in this case. Likewise, whether the Village's claimed easement falls within the enumerated Quarry parcels that Exceptions 25 and 28 "affect," Mot. at 15, could not be answered by looking at other policyholders' unrelated policies, claims, and "parcels." That issue is entirely specific to Hanson's Policy and the property it insures.

Although the Policy also contains some more generalized language in Exception 14 (precluding coverage for "[r]ights of way for drainage tiles, ditches, feeders, and laterals," Dkt. 1 ¶ 12) and Exclusion 3 (precluding coverage for certain "[d]efects, liens, encumbrances, adverse claims, or other matters," *id.* ¶ 11), which **may** be found in certain other First American policies,

8

whether and how those provisions apply is still necessarily dependent on the particulars of the claim at hand. Therefore, other customers' policies and claims would not be informative of whether the provisions in Exception 14 or Exclusion 3 apply to the Village's claimed easement.

Finally, Hanson argues that it is "entitled to discover whether First American has taken the position with other policyholders that a non-imputation endorsement (or potentially any endorsement for that matter) is implicitly conditioned on the accuracy of any affidavit given in connection with it." Mot. at 14. This again ignores the context-specific nature of title insurance claims and the fact that the language of the non-imputation endorsement was negotiated extensively and is bespoke to Hanson's Policy. *See* Silvertrust Decl. ¶ 11, Ex. B at Tr. 103:5-19. In any event, it is odd to say the least, for Hanson to suggest that it does not know that First American relies on the accuracy of affidavits given in consideration for non-imputation endorsements like the one at issue here, because the non-imputation affidavit that Hanson/MSC's officers signed in this case *explicitly says so*. Dkt. 1 ¶ 15 (quoting non-imputation affidavit, which states: "[t]he undersigned make this affidavit for the purpose of inducing First American to include the Endorsement … [and] with the knowledge that First American would not issue the Endorsement without having first received this affidavit and will rely on the assurances and representations made herein"). Hanson had ample opportunity during depositions to probe First American's witnesses on that issue and the undisputed testimony confirmed (unsurprisingly) that First American absolutely relies on the truth of non-imputation affidavits when agreeing to issue a non-imputation endorsement. *E.g.*, Silvertrust Decl. ¶¶ 10-11, Ex. A at Tr. 175:3-12 and Ex. B at Tr. 67:2-20. The notion that any further evidence pertinent to First American's reliance on non-imputation affidavits would be revealed by requiring First American to produce thousands of random policies and claims is simply farfetched.

Hanson's cursory assertion that examining other insurance policies and claims would be "relevant to whether First American made material misrepresentations" in violation of the Illinois Title Insurance Act is contrived. Mot. at 15. The supposed "material misrepresentation" that Hanson accuses First American of making is that First American allegedly did not inform Holdings that First American was intending to rely on the truth and accuracy of the non-imputation affidavit when issuing the non-imputation endorsement. Dkt. 52 ¶ 44. In addition to the fact that the non-imputation affidavit itself completely refutes that allegation, Dkt.1-2, Ex. B at ¶ 8, Hanson does not even attempt to explain how other policies and claims files could possibly show whether First American made any alleged misrepresentation in this case.

Consistent with the above, courts routinely deny discovery into other insurance policies and coverage claims—even those involving "standard" policy terms—on the basis that "insurance litigation rests upon particular factual circumstances, which are likely to differ significantly from case to case." *Apex Mortgage Corp. v. Great Northern Ins. Co.*, No. 17 C 3376, 2018 WL 341661, at *7 (N.D. Ill. Jan. 9, 2018) (denying motion to compel discovery of other insurance claims as irrelevant and unduly burdensome); *Nautilus Ins. Co. v. Raatz*, No. 08 c 6182, 2011 WL 98843, at *5 (N.D. Ill. Jan. 12, 2011) (denying insured's motion to compel responses to interrogatories and document requests relating to other insurance claims because such discovery was not relevant to the coverage issues in the case); *American Safety Cas. Ins. Co. v. City of Waukegan*, No. 07 C 1990, 2010 WL 3547958, at *2 (N.D. Ill. Sept. 7, 2010) (denying motion to compel interrogatories regarding other complaints and lawsuits involving similar liability coverage because such claims "would almost certainly involve different facts and circumstances"); *Tech Data Corp. v. Travelers Cas. and Sur. Co. of Am.*, 1:16-CV-11197, Dkt. 87 (minute entry) (N.D. Ill. Mar. 19, 2018) (denying motion to compel discovery of insurer's "treatment of other insured's claims" under other

10

insurance policies); *G&S Metal Consultants, Inc. v. Continental Cas. Co.*, No. 3:09-CV-493-JD-PRC, 2014 WL 2881537, at *6 (N.D. Ind. June 25, 2014) (refusing to compel interrogatory responses relating to other insurance claims because they were not relevant); *City of South Bend Indiana v. Illinois Union Ins. Co.*, 1:17-cv-01344, 2017 WL 9856736, at *2-3 (S.D. Ind. Dec. 8, 2017) (denying motion to compel interrogatory responses regarding similar claims because the possibility that the insurer interpreted an identical exclusion differently was too remote to warrant discovery).

None of the cases Hanson cites deal with title insurance claims, which are by their nature fact-specific. In *Transcap Associates, Inc. v. Euler Hermes American Credit Indem. Co*, the court permitted discovery regarding certain claims made by other insureds but, there the insured alleged that the insurer had "denied [the insured's] claim in bad faith," thus opening the door to discovery into treatment of other "similarly situated" policyholders. No. 1:08-cv-00723, 2009 WL 1543857, at *1 (N.D. Ill. June 3, 2009). Unlike *Transcap*, Hanson has never asserted any claim for bad faith handling of its coverage claim—nor could it, given that First American has been paying for Hanson's defense of the Village's easement claim (subject to a reservation of rights) since the coverage claim was submitted. *Am. Colloid Co. v. Old Republic Ins. Co.*, No. 93 C 0665, 1993 WL 222678 (N.D. Ill. June 21, 1993), is likewise inapposite. There, the court required the insurer to respond to interrogatories regarding insurance claims made by other insureds but only after the insurer had *conceded* that such evidence was relevant and also failed to demonstrate that responding to the interrogatories would be unduly burdensome. *See Am. Colloid*, 1993 WL

222678, at *2. By contrast, First American strongly disputes that the documents sought by Hanson have any relevance.[1]

Because the requested documents have no potential relevance to the question of insurance coverage for the specific claim submitted under the Policy at issue in this case, the Court should deny Hanson's motion.

2. Requests 4-6

Requests 4-6 seek First American's procedures/guidance concerning claims "relating to easement claims" and "the settlement of claims on behalf of [First American's] insureds." Dkt. 68-1. First American has no procedures or guidance concerning claims for easements or the settlement of easement claims on behalf of First American's insureds. Declaration of Warren Robinson in Opposition to Hanson's Motion to Compel ("Robinson Decl.") ¶ 15. However, First American has located and agreed to produce its general claims handling manual. *Id*. Although that manual does not mention anything about easements (let alone storm water easements) and is not relevant to this case, First American is providing it to Hanson as a courtesy. *Id*.

Hanson insists that First American should have produced certain external-facing continuing legal education ("CLE") presentations and similar materials made available to participants of First American's "Title Camp," a marketing program that provides webinars on a variety of topics. Mot. 15-17. However, such materials are not responsive to Requests 4-6 because they are not company procedures/guidance but, rather, educational materials intended for a general

---

[1] Hanson's additional citation to two non-binding Pennsylvania cases, Mot. at 11, are themselves at odds with "the majority of the opinions [under Pennsylvania law]" which "disfavor the discovery of similar claims evidence," even in the presence of bad faith allegations against an insurer. *Graham v. Progressive Direct Ins. Co.*, No. 09-969, 2010 WL 3092684, at *1 (W.D. Pa. Aug. 6, 2010). Finally, *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 107 (D.N.J. 1990), specifically disallowed the type of broad discovery into other insured's policies and claims files that Hanson seeks here.

12

audience. Nor are any of these CLE and Title Camp materials in any way relevant to this case. For example, Hanson cites a CLE delivered to the Mortgage Lending Institute regarding "Easements Appurtenant" under Texas law (it is undisputed that Illinois law applies in this case). Although that document identifies certain legal characteristics and requirements of easements generally, nothing in the presentation discusses First American's procedures for handling "easement *claims*" or the "settlement of *claims*." Dkt. 68-1. Because Hanson fails to show that the materials it seeks are responsive to its Requests and relevant to this case, its request to compel further responses to Requests 4-6 should be denied.

### B. Searching for, Collecting, Reviewing, and Producing the Documents Sought by Hanson Would Impose a Significant Undue Burden on First American.

To the extent Hanson's Requests have any tangential relevance, the Court should nevertheless deny Hanson's motion because the burden and expense to First American of searching for, collecting, reviewing, and producing any responsive material would not be proportional to the needs of the case. *See* Fed. R. Civ. Proc. 26(b)(1).

As an initial matter, as First American's counsel previously explained to Hanson, First American has no way to electronically search for all insurance policies and claims that relate to "storm water easements" or "easement claims." Robinson Decl. ¶ 9. First American's underwriting and claims files are maintained using separate dedicated document management systems. *Id.* ¶ 4. These systems have limited search capabilities and are designed to be searched by policy number or the name of the claimant. *Id.* ¶ 5. General searches of First American's claims file management system can be run based on claim type (a letter code that can be entered into the search box) or by a keyword search. *Id.* The keyword search function, however, is not able to search all documents across First American's system but, rather, is restricted only to searching the "Summary of Claimant's Statement," which is a short narrative abstract/description

13

of the claim that is drafted by First American's National Intake Center when a new claim is opened. *Id*. ¶¶ 5-6.

National Intake Center employees have discretion as to what they may choose to include or not include in each Summary of Claimant's Statement. *Id*. ¶ 7. However, in every case, the information that is included in the summary is based on the limited information provided to First American by the claimant during the initial submission and processing of the claim. *Id*. ¶¶ 6-7. As a result, the complete scope of a claim may not always be captured in the claim summary. *Id*. ¶ 6.

These search function limitations notwithstanding, First American has tried its best to evaluate the burden that Hanson's Requests would impose. For example, First American ran sample keyword searches across all claims opened between January 1, 2015 and October 31, 2022 that included the phrase "easement" or "sewer easement" in each claim's "Summary of Claimant's Statement." *Id*. ¶ 8. These searches hit on 5,878 claim summaries that contain the word "easement" and 103 claim summaries that contain the phrase "sewer easement." *Id*. Because claim files frequently contain attorney-client privileged material, First American would need to conduct a thorough review of all such files before producing them. *Id*. ¶ 13. Information contained in other claim files would also include a large amount of non-public and confidential information relating to First American's customers that would need to be manually redacted. *Id*. ¶ 14.

As each individual claim file may contain hundreds of individual documents, the burden and expense of review would be significant. *Id*. ¶¶ 11-12. For instance, the 103 "sewer easement" claim files alone contain more than 8,000 individual documents. *Id*. ¶ 8. Hanson's claim for coverage in this case contained 271 responsive documents totaling 3,452 pages. *Id*. ¶ 10. Figuring an estimated review rate of fifty documents per hour, it would take more than 160 hours of attorney

14

time to review the 103 "sewer easement" claim files. *Id*. ¶ 12. And that is to say nothing of the additional hundreds, if not many thousands, of hours that would be necessary to review the broader swath of "easement" claim files, which number more than fifty times the volume of "sewer easement" claim files. *Id*. In any event, given the limitations of First American's electronic search capabilities, the only way to collect all claim files potentially responsive to Hanson's Requests would be to manually review all of the 310,623 claims opened between December 31, 2014 and the present. *Id*. ¶ 9.

The burden and cost of such a review would be grossly disproportionate relative to the needs of this case, particularly when considering the lack of relevance of these documents in general. Hanson does not articulate any basis that would justify this burden in light of the single, straightforward coverage question posed in this action. Indeed, it is difficult to see Hanson's motion as anything other than an effort to protract fact discovery while imposing substantial burdens and expenses on First American, which continues to foot the bill for Hanson's defense costs in the Underlying Lawsuit while this case remains pending.

## IV. CONCLUSION

For the foregoing reasons, Hanson's motion should be denied.

Dated: January 18, 2023

By:    /s/ *Craig C. Martin*

WILLKIE FARR & GALLAGHER LLP

Craig C. Martin
Skyler J. Silvertrust
Olaf E. Wilson
300 North LaSalle
Chicago, IL 60654
Tel: (312) 728-9000
cmartin@willkie.com
ssilvertrust@willkie.com
owilson@willkie.com

15

Mitchell J. Auslander
(admitted *pro hac vice*)
787 Seventh Avenue
New York, NY  10019
Tel:  (212) 728-8000
mauslander@willkie.com

*Attorneys for*
*First American Title Insurance Company*