UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> HANSON AGGREGATES MIDWEST, formerly known as Material Service Corporation, <br><br> Defendant/Counterclaim Plaintiff. | Case No. 1:21-cv-06390 <br><br> Hon. Nancy L. Maldonado <br> Magistrate Judge Sunil R. Harjani |

### AFFIDAVIT OF WARREN A. ROBINSON

I, Warren A. Robinson, first being duly sworn, state under oath as follows:

1. I am employed by First American Title Insurance Company ("First American") as Claims Center Director of First American's Central Region. The facts stated in this declaration are based on my personal knowledge and information made available to me in the normal course of my employment.

2. I understand that Hanson Aggregates Midwest's ("Hanson") Second Set of Document Requests ("Requests") seek, as described by Hanson in its Motion to Compel, "other policyholder claims files" containing documents relating to claims for coverage of "easement claims that other policyholders have made against First American." Hanson's Requests also seek documents that relate to First American's "procedures, guidelines, and policies concerning claims for coverage of easement claims" and "the settlement of claims on behalf of First American's insureds."

1

3. Counsel for First American asked me to investigate whether it was feasible for First American to electronically search for documents responsive to Hanson's Requests for other policyholder claim files relating to "easements" and "sewer easements," and to estimate the burden that would be imposed on First American if it were required to produce responsive documents.

4. First American stores all insurance claim and underwriting documents in dedicated document management systems. First American's claim file management system, known as "CLASS," stores documents associated with title insurance claims in individual claim files.

5. First American's CLASS system is designed to be searched by assigned claim number or claimant name. First American has the capability to electronically search its CLASS system in other ways, but there are only two search methods that are capable of potentially determining whether a claim may relate to an "easement" and both of these methods are limited. The first method involves searching the CLASS system via "claim cause code" assigned to each claim file by a claims handler, but First American has no claim cause code assigned to a claim for an "easement" or a "storm water easement," as sought by Hanson. The second method of searching is to perform a keyword text search. The keyword text search does not search each and every document contained in CLASS, such as the documents included with an insured's tender of the claim, First American's coverage analysis, or communications to an insured; rather, the keyword text search only searches the text of a narrative claim summary drafted by the National Intake Center for each claim as it is opened in the claims system.

6. When a claim file is opened in CLASS, the National Intake Center drafts a narrative summary of the claim, known as a "Summary of Claimant's Statement," based on the information initially provided by the claimant when the claim is submitted. Oftentimes, the information

initially provided by the claimant is minimal. As a result, the Summary of Claimant's Statement frequently does not capture all of the facts and issues that may exist in a claim.

7. First American has no internal policies or guidelines regarding the information that the National Intake Center must include in each Summary of Claimant's Statement. Instead, the content of each summary is left to the subjective judgment of the individual opening the claim and is based on the review of the documents provided with the insured's initial tender of the claim.

8. Counsel asked me to have First American's claims department conduct a keyword text search of the CLASS system for claim files including the phrases "easement" and "sewer easement" for the period between January 1, 2015 and October 31, 2022. The result of the searches yielded 5,878 claim summaries using the word "easement" and 103 results using the phrase "sewer easement." These search results reflect the total number of claim files, but each claim file contains numerous other documents that would need to be collected and reviewed. For example, there are 8,012 total documents in the 103 claim files containing the phrase "sewer easement" in the Summary of Claimant's Statement.

9. Given the limited capabilities of First American's electronic search functions for the CLASS system, the only way to collect all claim files potentially responsive to Hanson's Requests would be for First American personnel to manually review every claim file opened between 2015 and the present. Between December 31, 2014 and the present, First American opened 310,623 claims. Manually reviewing the 310,623 claim files would take an extraordinary amount of time at great expense to First American.

10. Given the complexity and uniqueness of title insurance claims, it would be impossible to determine whether a given claim file is responsive to Hanson's Requests by reviewing the Summary of Claimant's Statement alone. Instead, a reviewer would need to review

each and every document within the claim file to determine whether it was potentially responsive to Hanson's Requests. Again, the number of documents contained in each claim file can vary, but oftentimes, a claim file contains a large number of documents. By way of example, the claim file for Hanson's claim for coverage in this case contained 271 responsive documents, totaling 3,452 pages.

11. The time and burden imposed on First American in connection with conducting a manual review would vary depending on the size and complexity of each claim, but it would undoubtedly require an extraordinary amount of time and expenditure by First American.

12. Assuming a review rate of 50 documents per hour, I estimate that it would take more than 160 hours of attorney time to review the 103 "sewer easement" claim files and thousands of hours to review the 5,878 "easement" claim files.

13. After conducting a manual review of all documents within each claim file, potentially responsive documents would then need to be collected and made available to counsel for First American for review for attorney-client and work product privilege. Counsel's review of other claim files for privilege would likely be difficult and time consuming because other claim files would include legal advice and work product from lawyers with roles that are unfamiliar to counsel for First American in this case.

14. Responsive claim files would also include a large amount of non-public information and confidential information relating to First American's customers that would need to be manually redacted. Such confidential information would likely include customer details, financial information regarding the parties and the transaction, other information relating to the transaction underlying the issuance of the title policy, and premium information.

15. As to Hanson's Requests for "procedures, guidelines, and policies concerning claims for coverage of easement claims" and the "settlement of claims on behalf of First American's insureds," First American has no responsive documents. First American does have a more general claims handling manual that is not specific to easement claims, and it is my understanding that this document will be produced to Hanson as a courtesy.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 13th day of January, 2023.

                                                      Warren A. Robinson