UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | |
| Plaintiff/Counterclaim Defendant, | Case No. 21 C 6390 |
| v. | Magistrate Judge Sunil R. Harjani |
| HANSON AGGREGATES MIDWEST, formerly known as Material Service Corporation, | |
| Defendant/Counterclaim Plaintiff. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant/Counterclaim Plaintiff Hanson Aggregates Midwest's ("Hanson") Motion to Compel First American Title Insurance Company ("First American") to Produce Documents in Response to Second Request for Documents [66]. The Court has considered the parties' briefing. For the reasons stated below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

This case concerns a title insurance policy (the "Policy") issued to Defendant's predecessor in interest ("MSC"). The Policy insures several properties, including a quarry that Hanson operates. Plaintiff claims it is not obligated under the Policy to defend or indemnify Defendant for a counterclaim filed against it in *Material Service Corporation v. Village of La Grange*, No. 2016 CH 09007 (Ill. Cook Cty. Cir. Ct., July 8, 2016) the ("Underlying Lawsuit") regarding the Village's right to discharge stormwater into a quarry. First American agreed to pay Hanson's defense costs subject to a reservation of rights to seek judicial determination. Doc. 1 at 5.

Plaintiff now alleges that Defendant is not entitled to coverage because the Policy excludes or excepts claims relating to the Village's interest in or use of the drainage pipe or the property at issue in the Underlying Lawsuit, such as Exclusion 3 and Exceptions 14, 25, and 28. Doc. 1 at 2. The Policy has unique provisions at the heart of this case. For example, Plaintiff alleges that the Policy's Non-Imputation Endorsement, in which Plaintiff agreed not to deny coverage under certain circumstances, does not preclude Plaintiff from denying coverage regarding the Underlying Lawsuit because a sworn affidavit that MSC provided to Plaintiff to induce it to issue the Non-Imputation Endorsement was materially false. *Id*. at 3-4. Defendant denies Plaintiff's claims and asserts counterclaims for declaratory judgment and other equitable relief.

On August 26, 2022, Hanson served its Second Request for Production of Documents (the "Requests"). Hanson alleges that it is seeking documents that fall into two categories. Doc. 66 at 7. First, other policyholder claims files containing documents relating to similar claims for coverage of easement that other policyholders have made against First American, including policies with easement exclusions, reservation of rights letters, and other communications with policyholders relating to such claims (Request Nos. 2-3 and 7-8). Second, documents that relate to First American's procedures, guidelines, and policies concerning claims for coverage of easement, including training or guidance that First American provides to its own employees or to the general public relating to matters relevant to the defenses that First American asserted here (Request Nos. 4-6).

On September 26, 2022, First American responded to the Requests and objected on various grounds, including relevance, overbreadth, undue burden, cumulativeness, and proportionality. *See generally* Doc. 68-2. In response to Request Nos. 2-3 and 6-8, First American stated that it would not search for or produce documents based on the Requests as written but was willing to

discuss with Defendant's counsel how the Requests might be narrowed or clarified. *Id*. at 5-8. In response to Request Nos. 4-5, First American stated that it does not possess documents responsive to the Requests. *Id*. at 6-7. Counsel for the parties conferred by telephone at least five times in an attempt to resolve their discovery disputes. Doc. 66 at 4 n.1. The most recent attempt was on December 13, 2022, but the parties were again unable to reach an agreement. *Id*. As a result, the parties complied with the requirements of Local Rule 37.2 before filing this motion. On December 22, 2022, the final day of discovery, *see* Doc. 60 (granting joint motion to extend fact discovery deadline), Hanson filed this motion.

## DISCUSSION

In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) of the Federal Rules of Civil Procedure governs. Under Rule 26(b)(1), parties are entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining the scope of discovery under Rule 26, relevance is construed broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). After all, discoverable information is not limited to evidence admissible at trial. Fed. R. Civ. P. 26(b)(1); *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 2021 WL 229656, at *2 (N.D. Ill. Jan. 22, 2021). While the scope of discovery is broad, the discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. *Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994). "A court must also "limit the frequency or extent of discovery otherwise allowed by [the] rules" if "the discovery sought is unreasonably cumulative or duplicative" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). The objecting party carries the burden of showing why a particular discovery request is improper.

3

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Furthermore, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013); *see also* Fed. R. Civ. P. 16(b)-(c) (providing the court broad authority to enter orders regarding the controlling and scheduling of discovery).

With these principles in mind, the Court addresses the proper bounds of discovery presented in this motion below.

### A. Discovery Requests for Other Policyholder Claim Files

First, Hanson seeks the production of other policyholder claim files containing documents relating to similar claims for coverage of easement claims that other policyholders have made against First American (Request Nos. 2-3 and 7-8). Specifically, Request No. 2 seeks all title insurance policies First American issued, sold, or subscribed to in favor of any insured containing an exception or exclusion related to a stormwater easement from 2005 to 2007 and 2015 to the present. Doc. 68-1 at 6. Request No. 3 asks for all documents relating to insurance coverage of easement claims received by First American from 2015 to the present, including but not limited to, those relating to the settlement of such claims. *Id*. at 7. Request No. 7 seeks all reservation of rights issued or sent by First American to any insured relating to claims for insurance coverage of easement claims from 2015 to the present. *Id*. Request No. 8 asks for all communications from 2015 to the present from First American to any insured relating to First American's determinations of coverage for easement claims. *Id*. at 8.

Hanson argues that other policyholder claims files, encompassed by Request Nos. 2-3 and 7-8, are relevant because they provide the best evidence of how First American interprets standard policy language, which it relies on in this dispute to deny coverage. Doc. 66 at 10. According to Hanson, these Requests may show whether First American treated Hanson consistently with other

policyholders, and if not, then the documents would undermine First American's interpretation. *Id*. at 11. Further, Hanson claims that these Requests are not unduly burdensome because they relate to the same type of policies and claims at issue in this case and are confined to a limited time period. *Id*. at 16-17.

In response, First American disagrees because policies issued to and claims submitted by other customers are irrelevant to the specific issues in Hanson's Policy and coverage claims. Doc. 77 at 9. According to First American, title insurance policies are tailored to the specific land they insure, and the policy exceptions at issue, for the most part, do not contain terms that would appear in other customers' policies. *Id*. at 10-11. As a result, a decision by First American in another claim would have no bearing on this one. *Id*. First American also argues that the Requests would impose a significant undue burden and expense given First American's search function limitations, which would require manual review. *Id*. at 16-18. Additionally, First American ran sample keyword searches across all claims over specific date ranges and identified voluminous results that would require review for privileged and confidential material. *Id*. at 17.

The Seventh Circuit has acknowledged the unique nature of title insurance in various contexts outside of discovery. *See, e.g.*, *BB Syndication Servs., Inc. v. First Am. Title Ins. Co.*, 780 F.3d 825, 827 (7th Cir. 2015) ("title insurance differs from other forms of property and liability insurance in that it only covers losses from defects in title and lien priority (and similar title-related risks), usually requires only a one-time premium, and lasts for as long as the insured holds title"); *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 399 (7th Cir. 2014) (explaining the differences between title insurance and general liability insurance). In the discovery context, courts in this district have denied motions to compel other policyholder claims and related policy materials on the basis that such discovery is irrelevant. *See, e.g.*, *Apex Mortg.*

5

*Corp. v. Great N. Ins. Co.*, 2018 WL 341661, at \*7 (N.D. Ill. Jan. 9, 2018) (denying motion to compel based on Pennsylvania law because plaintiff did not demonstrate a similarity between facts in other claims and those at issue); *City of S. Bend Indiana v. Illinois Union Ins. Co.*, 2017 WL 9856736, at \*3 (S.D. Ind. Dec. 8, 2017) ("Discovery into similar claims made by other policyholders is not relevant to the claims or defenses in this lawsuit at this time."); *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 2014 WL 2881537, at \*6–7 (N.D. Ind. June 25, 2014) (finding how other policyholders' claims were handled was irrelevant); *Nautilus Ins. Co. v. Raatz*, 2011 WL 98843, at \*5 (N.D. Ill. Jan. 12, 2011) (sustaining objections to interrogatories seeking information on other insureds for which plaintiff denied coverage on the same basis and whether plaintiff has acted in bad faith as "irrelevant to the larger coverage issue"); *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 2010 WL 3547958, at \*2 (N.D. Ill. Sept. 7, 2010) (defendant "does not identify the issues or say how other cases (which would almost certainly involve different facts and circumstances) involving these issues would be relevant. We do not think the slight potential for relevance of such information (if any) justifies the burden").

Hanson has failed to show how the slight relevance, if any, of other policyholder claim files justifies the burden. Indeed, Hanson has not demonstrated any similarity between the facts in this case and those at issue in other claims besides providing pure speculation. *See Apex Mortg. Corp.*, 2018 WL 341661, at \*7; *Am. Safety Cas. Ins. Co.*, 2010 WL 3547958, at \*2. More specifically, in this case, whether a different customer's policy provides coverage for their specific claim concerning their property or easement has little to no bearing on First American's decision to deny coverage based on Hanson's policy, property, and easement. For example, Policy Exceptions 25 and 28 define the scope of the coverage exceptions within either the particular context of the "Limited Warranty Deed recorded on March 9, 2022 as document 00171725 made

6

by . . ." or the quarry's "20 foot public utility easement and right of way for 54 inch sewer . . . as disclosed by instrument recorded April 6, 1935 as document . . ." Doc. 77 at 11. Exception 25 specifies that it only affects six of the parcels at the quarry, and Exception 26 only affects two of the parcels. Doc. 66 at 14. These exceptions are specific to Hanson's facts and circumstances. In addition, whether Hanson's non-imputation endorsement is conditioned on the accuracy of an affidavit given in connection with it, and whether First American made misrepresentations under the Illinois Title Insurance Act are questions specific to the dispute before this Court. These questions cannot be answered based on the factual circumstances of a different case where the endorsement, affidavit, or both have different language or were negotiated or signed under distinct circumstances. Whether and how these provisions apply depends on Hanson's particular warranty deed, the quarry's easement, and the instrument recordings. As such, other policyholder claims files would almost certainly involve different facts and circumstances. Accordingly, the Court will follow the weight of authority in this district, which leans heavily towards denying such other claims discovery.

Moreover, Hanson's own basis for these Requests is speculative, as evidenced by its' statements about what the discovery sought "may enable it to learn," "may reflect," "may demonstrate, and "may show." Doc. 66 at 5, 8; Doc. 80 at 8. Such speculation, without a showing by Hanson that the responses are likely to yield relevant information about their specific exceptions or exclusions, amounts to a fishing expedition in a pond where there is no evidence of fish. *Eternity Mart, Inc. v. Nature's Sources, LLC*, 2019 WL 6052366, at *3 (N.D. Ill. Nov. 15, 2019) (explaining defendant "has not given the Court any reason to believe that the pond might be stocked with fish."); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th Cir. 2015) (holding district court did not abuse discretion in denying party's request to depose

7

more employees where the request was based on speculation and party failed to present evidence that additional depositions would yield relevant information); *Batchelor v. Merck & Co.*, 2007 WL 4179015, at *3 (N.D. Ind. Nov. 20, 2007) (denying motion to compel where requesting party appeared to be "merely 'fishing' for discovery and hoping that discovery does exist to support their speculative and possible theory"); *Jones v. Union Pac. R.R. Co.*, 2014 WL 1715450, at *2 (N.D. Ill. May 1, 2014) (holding plaintiff failed to show relevance of discovery where plaintiff offered "nothing but speculation to support her theory that the additional evidence she seeks might reveal some sort of discrepancy related to the data or video produced concerning her husband's collision"). Put another way, discovery is not about aimlessly walking around a dark room and touching everything in sight. Rather, there must first be some light in that room that guides the way forward.

In this case, fact discovery began in February 2022, *see* Doc. 22, and after two extensions, *see* Doc. 51; Doc. 60, closed on December 22, 2022. Over eleven months, Hanson has had the opportunity to develop its case for this discovery using various discovery tools, including interrogatories, requests for production, and depositions. Now, Hanson grasps for straws in an attempt to provide evidence of relevance. For example, regarding Exception 14, Hanson's motion cites a Rule 30(b)(6) deposition where First American's designee could not define several terms in the exception, feeder and lateral. Doc. 66 at 11. Likewise, in Hanson's reply, Hanson identifies three witnesses' transcripts where they were unable to provide their own interpretation of what specific worders meant. Doc. 80 at 6 n.5. Specifically, Kelly Guarnieri was asked if she had an interpretation of what 'drainage tiles' means, if she knew what the word 'ditches' means, and if she knew what First American meant when it used the word 'ditches' in this language. Doc. 81-5, Tr. at 75:8-18. However, a designee's inability to define a term in the Policy does not show that

First American interpreted these terms and applied the standard language for other policyholder claims differently. It simply shows that the designee was unfamiliar with the meaning of those two terms.

In the context of the Non-Imputation Endorsement and Exclusion 3, Hanson asserts that First American's designee testified that its practice is to require a supporting affidavit for such endorsements. *Id*. at 13. Yet, Hanson uses this testimony to ask for discovery into whether, in claims in which First American refused to honor analogous endorsements, First American disclosed its position that such endorsements were conditioned on the accuracy of an affidavit before using the policies. However, this request is a leap beyond what the actual testimony was— only that supporting affidavits are included. Nothing in the testimony cited states that honoring a non-imputation endorsement is conditioned on the accuracy of an affidavit, or that First American has taken such a position or contrary position elsewhere. Any questions surrounding the circumstances of the signing of the affidavit or whether the endorsement is conditioned on the accuracy of an affidavit given in connection with it could have been asked during Rule 30(b)(6) depositions. Likewise, Hanson has not relied on any concrete evidence beyond a page of mere speculation to show how the Requests are relevant to its Illinois Title Insurance Act claims. Doc. 80 at 11. Here, Hanson could have served interrogatories that asked these exact questions and then relied on First American's response in later interrogatories, document requests, depositions, or this motion to compel as evidence to support its claims and theories. But that is not the situation currently before this Court. Ultimately, Hanson has not shown any evidence of an inconsistent practice that would advance its claims, and pure speculation in a motion filed on the last day of discovery is an insufficient rationale for this Court to compel responses to these Requests.

Going further, Hanson relies on three cases in support of its contention that its Requests

are relevant. Each case is inapposite. In *Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 2009 WL 1543857 (N.D. Ill. June 3, 2009), the court found that, in the general insurance coverage context (not title insurance), other insured information, namely discovery regarding claims made by similarly situated insureds, was relevant to the interpretation of policy language where bad faith was alleged. There, the court relied on the holding in *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106–07 (D.N.J. Aug. 31, 1990), which found that information regarding the claims of other insureds with *identical policy language* "is relevant for purposes of discovery since it may show that *identical language* has been afforded various interpretations by the insurer." (emphasis added). Instead, the present case concerns the specific language in a title insurance policy without a claim of bad faith. Additionally, due to the specificity of title insurance, the language in each of the exclusions and exceptions in the Policy is not identical to other insureds' policies—nor has Hanson put forward sufficient evidence to show a similarity exists. In *Am. Colloid Co. v. Old Republic Ins. Co.*, 1993 WL 222678 (N.D. Ill. June 21, 1993), the court permitted discovery into information about insurance claims of other insureds for liability *after* defendant conceded that such evidence was relevant and failed to demonstrate undue burden. Here, First American disputes relevance and, as explained below, has demonstrated undue burden. In *MediaTec Pub., Inc. v. Lexington Ins. Co.*, 2011 WL 841245 (N.D. Ill. Mar. 8, 2011), the court allowed a narrow set of discovery into other insureds because it was limited in time (November 1, 2008 to July 30, 2009), unlikely that a high number of claims specific to this event cancelation policy occurred during this period, and relevant to show how defendant defined "proximate cause" in the context of the economic collapse. This case is not analogous because Hanson's Requests involve a broader period (eight to ten years), a unique title insurance policy, and according to Hanson, potential ambiguity of various undefined terms (but not one specific defined term like

proximate cause). Accordingly, the Court finds these cases unpersuasive to the instant analysis.

Hanson also argues that the Policy was written on a standard American Land Title Association form and modified with standard endorsements. Doc. 80 at 5. First American recognizes that Exception 14 (precluding coverage for rights of way for drainage tiles, ditches, feeders, and laterals) and Exclusion 3 (precluding coverage for certain defects, liens, encumbrances, adverse claims, or other matters) use more general language that may be found in other policies but does not say that this Exclusion and Exception are standard forms that were not modified. Doc. 77 at 11-12. Indeed, one of First American's witnesses testified that he was unsure if the language in Exception 14 was the same as language in other policies. Doc. 81-7, Tr. at 59:11-15. Ultimately, the Policy at issue was modified by two sophisticated entities to include various exceptions and exclusions in order to cover Hanson's specific title insurance needs. Before the Court is not a generic policy that would apply to all homeowners in one neighborhood without any negotiation or modification. Thus, other policies are not informative of whether the provisions in Hanson's Policy apply to the Village's claimed easement.

Finally, First American has shown that searching for, collecting, reviewing, and producing the documents sought by Hanson in its Requests would impose a significant undue burden. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery."). First American explained that it is limited in its ability to search for all insurance policies and claims related to specific search terms. Doc. 77 at 16. Specifically, First American has no way to electronically search for all insurance policies and claims that relate to storm water easements or easement claims because the keyword search function in its document management system is restricted to searching the summary of claimant's statements, which is drafted by First American's

National Intake Center when a new claim is opened. *Id*. at 16-17. Notwithstanding those limitations, First American analyzed the burden that the Requests would impose by running sample keyword searches across all claims opened between January 1, 2015 and October 31, 2022, that included the terms "easement" or "sewer easement" in the summary for the claim file statement. *Id*. at 17. In doing so, First American explained that with an estimated review rate of fifty documents per hour, it would take more than 160 hours of attorney time to review only the 103 "sewer easement files." *Id*. at 17-18. Ultimately, the burden that First American has demonstrated is significant and is not proportional to the needs of the case.

The Court also finds that Hanson's Requests encompass an overly broad time period. While there is no *per se* rule for how many years of information a party may request, courts have found that documents encompassing five or more years in the insurance context may be overly broad and not proportional. *See, e.g.*, *Apex Mortg. Corp.*, 2018 WL 341661, at *7 ("requiring [defendant] to locate the requested documents for the requested ten-year time span would be unduly burdensome and not proportional to the needs of this case."); *Nautilus Ins. Co.*, 2011 WL 98843, at *5 (finding interrogatories seeking information from the last five and ten years unduly burdensome where the purchase of property and the issuance of the policy occurred during the past five years). Indeed, district courts have wide discretion in determining the scope of discovery. *See Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832, 839 (7th Cir. 2014) (citation and quotation omitted). Here, Hanson has requested documents from the past eight or ten years. Specifically, Request No. 2 seeks documents from 2005 to 2007 and 2015 to the present, totaling ten years of records. Doc. 68-1 at 6. In addition, Request Nos. 3 and 7-8 ask for documents from 2015 to the present, totaling eight years of information. *Id*. at 7-8. However, the Underlying Lawsuit was filed in 2016, and the

12

Complaint before this Court was not filed until 2021. Hanson has not explained why documents from before the Policy was entered into nor why documents from before the Complaint was filed are proportional to the needs of this case. As a result, Hanson has not established that the timeframe of documents Hanson has requested are proportional. Given Hanson's broad drafting of its Requests, and First American's concerns regarding searching for, collecting, reviewing, and producing these documents, the Court finds the eight-to-ten-year period encompassed in the Requests overly broad.

Thus, due to the minimal relevance of the Requests and the undue burden and expense required to identify and review the potentially responsive universe of documents, the Court denies Hanson's motion with respect to Request Nos. 2-3 and 7-8. Because fact discovery has already closed, the Court's denial is with prejudice. Hanson already had an opportunity to delve into these questions during the course of fact discovery and depositions.

### B. Discovery Requests for First American's Procedures, Guidelines, and Policies

Second, Defendant seeks to compel documents concerning First American's procedures, guidelines, and policies regarding claims for coverage of easement claims (Request Nos. 4-6). Specifically, Request No. 4 seeks all documents relating to First American's procedures, guidelines, and policies concerning claims for insurance coverage relating to easement claims. Doc. 68-1 at 7. Request No. 5 asks for all documents relating to First American's external title agent guidance concerning claims for insurance coverage relating to easement claims. *Id*. Request No. 6 seeks all documents relating to First American's procedures, guidelines, or policies concerning the settlement of claims on behalf of First American's insureds. *Id*.

Hanson argues that its Requests are relevant to how First American trains its claim handlers to apply policy language. Doc. 66 at 10-11. Subject to First American's objections, First American

stated that it has no procedures or guidance concerning claims for easements or the settlement of easement claims responsive to Request Nos. 4 and 5. Doc. 68-2 at 6; Doc. 77 at 15.  Hanson claims that it is unlikely First American has no requested documents due to materials on its website, including a "Commercial Endorsement Guide," guidelines relating to Non-Imputation Endorsements, and an "Underwriting Library." Doc. 66 at 14-15.  Hanson also asserts that First American performs Continuing Legal Education ("CLE") seminars, but no documents from any presentations were produced. *Id*. at 16.  First American responds that the CLE presentations and similar materials from First American's marketing program are not responsive to the Requests because they are not company procedures or guidance but are instead intended for a general audience and are not related to this case. Doc. 77 at 15-16.  However, First American has located and agreed to produce its general claim handling manual. *Id*. at 15.[1]  With respect to Request No. 6, First American declined to search for documents given its objections. *Id*. at 7.

Hanson's motion to compel with respect to Request Nos. 4-6 is granted in part.  A court may require a party to produce procedures, guidelines, and policies that are directly relevant to the allegations or defenses in a case. *See, e.g.*, *Kleinrichert v. Am. Fam. Ins. Grp.*, 2011 WL 470614, at *4 (S.D. Ind. Feb. 3, 2011) (finding defendant's internal policies and procedures relevant to plaintiff's claim, so they must be produced); *Smith v. Metro. Prop. & Cas. Ins. Co.*, 2021 WL 3129453, at *8 (N.D. Ind. July 22, 2021) (explaining "policy and other manuals, instructions, rules, regulations, standards, or directions of [defendant], pertaining to handling claims made by homeowners' policies—is appropriately limited to the materials pertaining to the handling of homeowners' policies and that the materials are relevant to Plaintiffs' bad faith claim").  The

---

[1] First American states that the manual does not mention anything about easements and is not relevant to the case. Doc. 77 at 15.  Nevertheless, First American will produce it as a courtesy. *Id*.

Complaint before this Court is based on the Underlying Lawsuit, where the Village alleges it has an easement over the land, now the quarry owned by Hanson. Doc. 1 at 4. Notably, Exceptions 14, 25, and 28 include language that implicates or references the easement that led First American to deny Hanson's claim. *Id.* at 2, 5, 8. In particular, Exception 28 excepts coverage for a "20 foot public utility easement," and Exception 25 excepts coverage for claims arising from easements. *Id*. at 8. Regarding Exception 14, the property over which the Village claims an easement is a right of way for drainage tiles, ditches, feeders, or laterals as described in Exception 14. *Id*. As such, the portions of Request Nos. 4-6 that implicate easement claims are relevant.[2]

Potions of Request No. 6 are irrelevant, overly broad, and unduly burdensome. Documents relating to procedures, guidelines, or policies concerning *the settlement of claims* on behalf of insureds goes beyond the scope of documents that could reasonably be identified as relevant to this case. Doc. 68-1 at 7 (emphasis added). This Request is not tailored to the factual allegations in the present case because it can reasonably be construed to seek the production of procedures, guidelines, or policies concerning any settlement of any claim at any time. Currently, Hanson's argument focuses on First American's refusal to search for documents that are potentially responsive to this Request, but neglects to explain why these documents would be helpful in the first instance. Doc. 66 at 16. Without any explanation, Hanson has not shown how *all* documents relating to the settlement of *all* claims on behalf of insureds are relevant. Indeed, information regarding the settlement of all claims constitutes a fishing expedition that the Court will not permit. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d at 766 (7th Cir. 2015); *Batchelor*, 2007 WL 4179015, at \*3; *Jones*, 2014 WL 1715450, at \*2. However, as already

---

[2] Contrary to Hanson's claim, *see* Doc. 66 at 14-15, CLE presentations and marketing program materials are not related to Request Nos. 4-5 unless they are specifically included in an internal procedure, guideline, policy, or external title agent guidance.

explained, the portion of Request No. 6 that implicates easement claims is relevant. *See infra* at 13-14. The narrower universe of documents concerning only the settlement of easement claims may be relevant because this case concerns Hanson's easement and the denial of coverage in the Underlying Lawsuit. Hanson explained that it attended mediations with the Village and First American in an attempt to settle the Underlying Lawsuit with the Village. Doc. 66 at 3-4. More generally, throughout Hanson's briefing, Hanson has reiterated the importance of documents relating to easement claims and First American's denial of coverage to the factual allegations before this Court. *See, e.g.*, Doc. 66 at 3-5, 7-9; Doc. 80 at 1, 4-5. For these reasons, in responding to Request No. 6, the Court will only require First American to produce documents relating to its procedures, guidelines, or policies concerning the settlement of easement claims on behalf of its insureds.

In sum, First American must produce documents relating to its internal procedures, guidelines, and policies relating to its coverage of easement claims, external title agent guidance concerning claims for insurance coverage relating to easement claims, and the settlement of easement claims. All productions, if any, are due by March 24, 2023. In addition to any production, First American will execute a certification affirming that it has produced all responsive documents in its possession, custody, or control subject to Federal Rule of Civil Procedure 11 and file that certification on the docket by March 24, 2023.

**Conclusion**

For the reasons stated above, the Court grants in part and denies in part Defendant's Motion to Compel [66]. All production and affidavit are due by March 24, 2023. The affidavit should be filed on the docket and will be subject to Federal Rule of Civil Procedure 11.

**SO ORDERED.**

Dated: March 7, 2023

_____
Sunil R. Harjani
United States Magistrate Judge

17